IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KATHLEEN M. FEHN, | ) CIVIL NO. 05-00082 JMS/BMK |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BERNARD W. HVIDDING, individually | ) ORDER STRIKING PLAINTIFF'S |
| and as an employee of Child Protection | ) OPPOSITION TO THE |
| Services, Department of Human Services, | ) DEFENDANTS' MOTIONS FOR |
| State of Hawaii; ED LEONG, | ) SUMMARY JUDGMENT AND |
| individually and as an employee of Child | ) GRANTING THE DEFENDANTS' |
| Protection Services, State of Hawaii; | ) MOTIONS FOR SUMMARY |
| CHILD PROTECTION SERVICES, | ) JUDGMENT |
| Department of Human Services, State of | ) |
| Hawaii; STATON MINESHIMA, | ) |
| individually and as an employee of Hale | ) |
| Kipa; HALE KIPA, INC.; AULANI | ) |
| MCNEIL, individually; and DOE | ) |
| ENTITIES 1-100, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

ORDER STRIKING PLAINTIFF'S OPPOSITION TO THE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT AND GRANTING THE
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

    Pro se Plaintiff Kathleen Fehn contends that the Defendants violated

her constitutional rights to familial association and to practice her chosen

profession.  On April 3, 2006, Defendants Hvidding and Leong, in their official

capacities ("DHS Defendants"), filed a motion a for summary judgment in which

they argue that Fehn's only claim remaining against them is barred under the doctrine of res judicata.  On May 3, 2006, Hvidding and Leong, in their individual capacities ("individual capacity Defendants"), filed a motion for summary judgment in which they argue that they are entitled to absolute and/or qualified immunity as to Fehn's claims.  They also argue that, even if they are not entitled to immunity, there are no material issues of fact remaining as to any of Fehn's claims and they are entitled to summary judgment.  On May 2, 2006, Defendants Hale Kipa and Staton Mineshima ("Hale Kipa Defendants") filed a motion for summary judgment in which they contend that they are not subject to liability because they were not acting under color of state law.

On August 16, 2006, Fehn filed an untimely opposition to the Defendants' motions for summary judgment.  The Hale Kipa Defendants and the individual capacity Defendants have asked this court to strike Fehn's opposition and attached exhibits.

For the reasons discussed herein, the court STRIKES Fehn's memorandum and exhibits in opposition to the motions for summary judgment and GRANTS all three motions for summary judgment.

# I. <u>BACKGROUND</u>

Fehn alleges that each Defendant in this action interfered with her constitutional right to familial association with her daughter, Sasha.  She also contends that her name was placed on the Child Protective Services ("CPS") Abuse Registry, thereby preventing her from practicing her profession as a teacher.  Her Complaint alleges the following five "counts":  (1) Hvidding and Leong directed McNeil to remove Fehn's daughter, Sasha, from Hale Kipa, a private group home, without Fehn's consent; (2) the Defendants did not allow Fehn to see Sasha after she was removed from Hale Kipa; (3) Hvidding filed a police report in Fehn's name without Fehn's approval regarding Sasha's disappearance from Aulani McNeil's home; (4) Hvidding and Leong filed a petition with CPS in retaliation for Fehn's refusal to leave Hawaii; and (5) Hvidding placed Fehn's name on the CPS Abuse Registry and, as a result, Fehn cannot work as a teacher.  Fehn's allegations are laid out in greater detail in the court's November 3, 2005 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss; the facts described in that Order are incorporated herein.

The DHS Defendants allege that they first became involved with Fehn and her family when they received a report in December 2002 that Sasha had been admitted into Kahi Mohala, a mental health facility, due to depression and

suicidal ideation allegedly caused by Fehn's abusive behavior toward her.  The

DHS Defendants contend that they also received a report from a counselor at

Sasha's high school stating that Sasha had not been attending school regularly;

Sasha allegedly related to the counselor that Fehn belittled her and required her to

perform excessive amounts of chores, depriving her of sleep.  Fehn disputes this

account.  She contends that the DHS became involved with her family after

Sasha's allegedly abusive boyfriend called CPS to make a false report against

Fehn.

        The DHS Defendants allege that DHS assigned a social worker, other

than Hvidding or Leong, to investigate the allegations against Fehn.  As a result of

this investigation, the social worker concluded that Fehn posed a threat of harm to

Sasha.  Defendant Leong, Hvidding's supervisor at DHS, contends that he then

assigned Fehn's case to Hvidding for the purpose of providing follow-up services.

DHS allegedly recommended that Fehn undergo a psychiatric evaluation because

other professional counselors and physicians had indicated that she might be

mentally or emotionally unstable.

        On February 4, 2003, DHS issued a notice to Fehn confirming the

allegation of a threatened harm to her daughter.  Fehn requested, and received, an

administrative Fair Hearing to contest the finding of threatened harm.  A Fair

Hearing was held on July 25, 2003; both DHS and Fehn presented evidence and

testimony.  On August 6, 2003, the Hearing Officer issued a decision stating that

the "Department [of Human Services] properly confirmed a threat of

psychological and/or physical harm to the Claimant's minor daughter."  The

Hearing Officer ordered that the confirmed report of threatened harm be referred

to Hawaii's central registry on child abuse and neglect as required by Hawaii

Revised Statutes ("HRS") § 350-2 and its implementing administrative rule,

Hawaii Administrative Rule ("HAR") § 17-920.1-12.  Ex. 2 to Defendants

Hvidding and Leong's Concise Statement of Facts in Support of Motion for

Summary Judgment at 6.  Fehn was given notice that she could appeal the Hearing

Officer's decision to Circuit Court.  Though Fehn argues that she later raised her

objections to the Fair Hearing in an unrelated proceeding in Family Court, she

admitted at the August 21, 2006 hearing that she never appealed the Hearing

Officer's decision.

Hvidding contends that he became concerned about Fehn's youngest

daughter, Natasha, based on the investigation of Fehn's treatment of Sasha.

Hvidding therefore filed a petition in Family Court seeking family supervision

with respect to Natasha.  The DHS Defendants contend that the petition with

respect to Natasha was dismissed after Fehn agreed to undergo a psychological

evaluation.  Fehn alleges that the DHS Defendants pursued the petition against her regarding Sasha in retaliation for Fehn's refusal to leave Hawaii and her request of a Fair Hearing on the finding of threatened harm against Sasha.  Nonetheless, Fehn acknowledges that the Family Court petition regarding Natasha was dismissed.

After receiving over two months of extensions, the final filing deadline for Fehn's opposition to the summary judgment motions was August 9, 2006.  Fehn did not file her opposition until August 16, 2006.  The Hale Kipa Defendants and individual capacity defendants moved to strike Fehn's opposition. The court heard argument from all parties on the pending motions on August 21, 2006.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the

moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

## III.   ANALYSIS

### A.    Motion to Strike Fehn's Opposition

The hearing on the Defendants' motions for summary judgment was originally scheduled to take place on June 13, 2006.  On May 17, 2006, Fehn filed a motion seeking an extension of time within which to conduct additional discovery and prepare her opposition to the Defendants' motions.[1]  Over objections by the Defendants, the court granted Fehn's motion and rescheduled the hearing on this matter for August 21, 2006.  In its June 1, 2006 Order granting Fehn's motion for an extension of time, the court cautioned Fehn that she should be prepared to the defend against the Defendants' motions on August 21, that her

---

[1] In her May 17, 2006 motion, Fehn specifically requested "an extension be granted for 60 days that date being August 5, 2006."  After the defendants objected to the requested continuance, Fehn filed a May 31, 2006 "Adendum" [sic] to her motion for extension of time, again requesting an extension until August 5, 2006.

opposition was due by August 3, and that she would not be granted additional extensions for filing her opposition.

      Notwithstanding the court's admonishment, on August 2, 2006, Fehn filed another motion seeking an extension to respond to the Defendants' motions. On August 4, 2006, the court entered an order denying Fehn's motion and confirming that the hearing on the Defendants' motion would take place as scheduled on August 21.  The court did, however, grant Fehn a short extension beyond what the local rules allow to file her opposition.  The court's order made it clear that Fehn's opposition was due on or before August 9, 2006.  Moreover, court staff left a message on Fehn's answering machine on August 4 informing Fehn that the hearing would go forward on August 21 and that her opposition to the Defendants' motions was due no later than August 9.

      Fehn did not file her opposition and exhibits until August 16, 2006, only five days before the hearing.  The Hale Kipa Defendants and the individual capacity Defendants each filed a reply memorandum seeking to strike Fehn's untimely opposition.

      Local Rule 7.4 states that "[a]n opposition to a motion set for hearing shall be served and filed not less than eighteen (18) days prior to the date of the hearing. . . .  No further or supplemental briefing shall be submitted without leave

of court."  Fehn's opposition was due August 3, 2006; the court granted Fehn

leave to file her opposition on or before August 9.  No further briefing was

authorized after August 9.

Fehn has failed to demonstrate good cause for her late filing.  Fehn's

opposition states rather vaguely that she "did not fully understand the scope of

what a scheduling conference was all about."  Regardless of Fehn's understanding

of the scheduling conference, she was given unambiguous notice both in a written

order from the court and in a phone message from court staff that her opposition

was due on August 9.  She chose to disregard this order.  At the August 21

hearing, Fehn stated she filed her opposition late because it was time consuming

for her to write her opposition and assemble all of her exhibits.  The court has

heard this explanation from Fehn before.  On June 1, the court accommodated

Fehn by granting her over two additional months to conduct discovery, prepare her

opposition, and assemble exhibits.  The court then granted Fehn yet another week

beyond what the Local Rules allow to file her opposition.  There is simply no

excuse for her disregard for the orders of this court.  Her memorandum and

exhibits in opposition to the Defendants' motions for summary judgment are

therefore stricken.

The court is mindful of Fehn's pro se status, but cannot simply ignore her late filing with full knowledge of the court-imposed deadlines. Pro se litigants must follow the same procedural rules as all other litigants. See *American Ass'n of Naturopathic Physic. V. Hayhurst*, 227 F.3d. 1104, 1107-08 (9th Cir. 2000); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). This court's August 4, 2006 Order was clear -- Fehn's opposition was due on or before August 9, 2006. Fehn fully participated in the briefing regarding the scheduling of the hearing. This is not an example of a pro se litigant being unable to follow often complex procedural rules. Instead, Fehn simply ignored a court-imposed deadline for filing her opposition.

The court notes that a review of Fehn's exhibits indicates that she has submitted no admissible evidence in support of her opposition. She has submitted no sworn affidavits or declarations as required by Rule 56 of the Federal Rules of Civil Procedure; instead, the bulk of her evidence consists of personal notes or diary entries. The notes themselves do not indicate who the author is or when they were created and are inadmissible hearsay. Fehn has also submitted a number of documents with no explanation of their origin or authenticity. Thus, even if the court considered Fehn's untimely opposition, she has come forward with no admissible evidence to rebut the evidence submitted by the Defendants.

10

In the following sections, the court examines the Defendants'
evidence and arguments and concludes that the Defendants are entitled to
summary judgment.

## B.      The Hale Kipa Defendants

Fehn contends that the Hale Kipa Defendants wrongfully released
Sasha to Aulani McNeil, thus depriving Fehn of her right to familial association.
Fehn's Complaint alleges that her claims arise under 42 U.S.C. §§ 1983 and 1985.[2]
Fehn's claims under §§ 1983 and 1985 both fail as a matter of law.

### 1.      The Hale Kipa Defendants did not act under color of state law for purposes of § 1983

"To sustain an action under § 1983, a plaintiff must show (1) that the
conduct complained of was committed by a person acting under color of state law;
and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri
v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  The Hale Kipa
Defendants contend that they are entitled to summary judgment on Fehn's § 1983

---

[2] Fehn's Complaint also references 42 U.S.C. §§ 471, 472, 671 and 672.  As discussed in
the court's November 3, 2005 Order Granting in Part and Denying in Part Defendants' Motion to
Dismiss, Fehn has failed to state a claim under these federal statutes.  The court also notes that
Fehn's Complaint could be read to assert various state law causes of action.  The court declines
to exercise jurisdiction over any such claims after granting summary judgment in favor of the
Hale Kipa Defendants on all of Fehn's federal claims.  *See* 28 U.S.C. 1367(c)(3).

claim because they are not state actors and did not act under color of state law.
The court agrees.

As a general matter, it is presumed that private parties are not acting
under the color of state law for purposes of § 1983. *Sutton v. Providence St.
Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999); *Price v. Hawaii*, 939 F.2d
702, 707-08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color
of state law."). "The ultimate issue in determining whether a person is subject to
suit under § 1983 is the same question arising under the Fourteenth Amendment:
is the alleged infringement of federal rights 'fairly attributable to the State?'"
*Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson
Oil Co.*, 457 U.S. 922, 937 (1982)).

There is no evidence indicating that the alleged actions of the Hale
Kipa Defendants can in any way be attributed to the state.  Hale Kipa is a private,
non-profit organization and Mineshima is, and was at all relevant times, its
program director.  The state played no role in Sasha's placement at Hale Kipa;
Sasha was a "walk-in" to a Hale Kipa group home, meaning that Sasha checked
herself into the group home with Fehn's permission.  Ex. A to Declaration of
Staton Mineshima.  While at Hale Kipa, Sasha received emergency shelter
services and counseling.

12

Fehn's only argument that the Hale Kipa Defendants are state actors is that Hale Kipa receives funding from the State of Hawaii.  The receipt of public funding does not render the Hale Kipa Defendants state actors.  *See Rendell-Baker*, 457 U.S. at 840 (holding that the receipt of public funds did not make the defendant's decisions acts of the state.)  *See also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1538 (9th Cir. 1992) ("The fact that defendants rely heavily on government contracts does not, by itself, transform their action into state action.")  Nor does state regulation of the Hale Kipa Defendants render them state actors.  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State . . . [there must be] a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  (Internal citations and quotation signals omitted.)).

In short, there is simply no evidence that the Hale Kipa Defendants were acting under the color of state law when they allegedly engaged in the conduct described in the Complaint.  The Hale Kipa Defendants are therefore entitled to summary judgment on Fehn's § 1983 claim.

13

2.      <u>Fehn's § 1985 claim fails because she has not alleged that the Hale Kipa Defendants discriminated against her based on her membership in a protected class</u>

State action or conduct under color of state law is not needed to establish a claim under § 1985.  *See Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).  In order to prevail on a § 1985 conspiracy claim, a plaintiff must allege and prove:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Sever*, 978 F.2d at 1536.  "The language [in § 1985] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Fehn has not alleged, argued, or provided any evidence suggesting that the Hale Kipa Defendants acted with a racial or other class-based animus. Accordingly, the court grants the Hale Kipa Defendants' motion for summary judgment as to Fehn's § 1985 claim.

14

## C.    The DHS Defendants

The majority of Fehn's claims against the DHS Defendants were dismissed on Eleventh Amendment grounds in the court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss.  The only claim remaining against the DHS Defendants is a § 1983 claim for prospective relief based on the allegedly unlawful inclusion of Fehn's name on the CPS Abuse Registry.  Fehn claims that the inclusion of her name on the Abuse Registry has prevented her from practicing her chosen profession as a teacher and she seeks to have her name removed from the list.

The DHS Defendants contend that Fehn was granted and participated in an administrative Fair Hearing to determine whether she posed a threat of harm to her daughter.  The Hearing Officer confirmed the threat of harm and Fehn's name was placed on the CPS Abuse Registry as a result.  The DHS Defendants contend that Fehn had the opportunity to appeal the Hearing Officer's decision but failed to do so.  They argue that the principle of res judicata prevents Fehn from now relitigating whether her name should appear on the CPS Abuse Registry.  The court agrees.

"Under Hawaii law, state courts give preclusive effect to the findings of an administrative agency if the issue decided in the prior action is identical to

the issue in the current action, a final judgment on the merits was issued, and the

parties in the current action are the same or in privity to the parties in the prior

action." *Bator v. State of Hawaii*, 39 F.3d 1021, 1027 (1994) (citing *Santos v.*

*State*, 64 Haw. 648, 646 P.2d 962, 965-66 (1982)).  The Fair Hearing meets all

three of these requirements:  (1) the issue -- whether DHS wrongfully determined

that Plaintiff presented a threat of harm to her daughter and consequently included

her name in the CPS Abuse Registry -- is identical in both cases; (2) a final

judgment on the merits was issued as a result of the Fair Hearing;[3] and (3) the

parties in the current action are the same as those in the prior action.

The state administrative determination must also satisfy the

requirements of fairness discussed in *United States v. Utah Construction & Mining*

*Co.*, 384 U.S. 394, 422 (1966), in order to merit the application of res judicata.  To

satisfy these fairness requirements, the DHS Defendants must demonstrate:  "(1)

that the administrative agency act[ed] in a judicial capacity, (2) that the agency

resolve[d] disputed issues of fact properly before it,[4] and (3) that the parties [had]

---

[3] The Fair Hearing Decision states:  "This is a final decision of the Department of Human
Services and will be implemented by the Department upon receipt."  Ex. 2 to the Declaration of
Dennis Ferm in support of the DHS Defendants' Motion for Summary Judgment.

[4] "An issue is properly before an administrative tribunal if that body has jurisdiction to
decide it" under state law.  *Guild Wineries & Distilleries v. Whitehall Co.*, 853 F.2d 755, 759
(9th Cir. 1988).

16

an adequate opportunity to litigate." *Misischia,* 60 F.3d at 629 (citing *Utah Construction*, 384 U.S. at 422, and *Miller*, 39 F.3d at 1033). *See also Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) (administrative determination became final when petitioner failed to seek judicial review in state courts).

Each of these requirements has been satisfied in the instant case: (1) DHS was acting in a "judicial capacity" when it determined that Fehn threatened harm to Sasha; (2) Fehn does not dispute that the issue was "properly before" the Fair Hearing Officer; and (3) the parties had an adequate opportunity to litigate insofar as both parties were able to submit evidence and Fehn was informed of her opportunity to appeal the Hearing Officer's decision.

The Hearing Officer ruled that DHS properly confirmed that Fehn posed a threat to Sasha. As a result of the Hearing Officer's decision, Fehn's name was placed on the CPS Abuse Registry. Fehn was informed of her right to appeal this decision and failed to do so. Therefore, the court agrees that Plaintiff is precluded from relitigating the issue of whether DHS wrongfully placed her name on the Abuse Registry. Accordingly, the court grants the DHS Defendants' motion for summary judgment.

//

//

17

**D.     The Individual Capacity Defendants**

          The individual capacity Defendants argue that they are entitled to

either absolute or qualified immunity as to all of Fehn's claims.  They contend

that, to the extent they are not entitled to immunity with respect to any of Fehn's

allegations, they are nonetheless entitled to summary judgment because Fehn has

failed to support her allegations with admissible evidence.  The court agrees and

grants their motion for summary judgment as to all of Fehn's claims.

          The individual capacity Defendants are entitled to absolute immunity

as to Fehn's claim that they violated her constitutional right to practice her chosen

profession.  Fehn claims that her right to practice her profession was violated

when her name was placed on the CPS Abuse Registry, preventing her from

working as a teacher.  The individual capacity Defendants contend that they were

not responsible for the investigation and hearing that ultimately resulted in Fehn's

name appearing on the CPS Abuse Registry.  Even assuming the individual

capacity Defendants were responsible for the investigation and hearing, they are

entitled to immunity for their participation.  HRS § 350-3 (providing immunity for

those who report suspected abuse and those who investigate such claims); *Mabe v.

San Bernardino County, Dept. of Pub. Soc. Servs.*, 237 F.3d 1101, 1109 (9th Cir.

2001) ("[S]ocial workers are entitled to absolute immunity for the initiation and

18

pursuit of dependency proceedings, including their testimony offered in such

proceedings").  The individual capacity Defendants are thus entitled to summary

judgment as to Fehn's claim that they violated her constitutional right to practice

her chosen profession.

     For the same reasons, the individual capacity Defendants are also

entitled to absolute immunity as to Fehn's claim that they violated her right to

familial association when they filed a petition in Family Court regarding Fehn's

youngest daughter.  HRS § 350-3; *Mabe*, 237 F.3d at 1109.  The court therefore

grants summary judgment in favor of the individual capacity Defendants on this

claim.

     The individual capacity Defendants are also entitled to summary

judgment as to Fehn's other claims that they violated her right to familial

association.  Fehn alleges that the individual capacity Defendants directed McNeil

to remove Sahsa from Hale Kipa, refused to allow Fehn to see Sasha once Sasha

went to McNeil's home, and told Fehn that they would take custody of her

youngest daughter if Fehn did not agree to leave the state of Hawaii.  She also

alleges that Hvidding falsified a police report after Sasha ran away from McNeil's

home.  Assuming that some or all of these claims would entitle Fehn to relief if

true, Fehn has come forward with no admissible evidence in support of any of these claims.

First, the individual capacity Defendants deny that they directed McNeil to remove Sasha from Hale Kipa.  Both Hvidding and Leong submitted sworn declarations stating that neither of them made the decision to place Sasha with McNeil.  Declaration of Bernard W. Hvidding ("Hvidding Decl."), ¶ 24; Declaration of Ed Leong ("Leong Decl."), ¶ 11.  *See also* Declaration of Aulani McNeil ("McNeil Decl."), ¶¶ 9-10 (stating that Fehn asked McNeil to take Sasha into her home and that McNeil agreed to do so at Fehn's request).  Second, Hvidding denies in a sworn declaration that he prevented Fehn from seeing Sasha while Sasha stayed with McNeil, and Leong denies in a sworn declaration that he ever participated in an investigation of Fehn regarding her children.  Hvidding Decl., ¶ 26, Leong Decl., ¶¶ 10-14.  *See also* McNeil Decl., ¶ 11 (stating that she (McNeil) asked Fehn not to call Sasha the first few days that Sasha stayed with McNeil).  Third, both Hvidding and Leong have submitted sworn declarations denying that they ever threatened Fehn or told her to leave Hawaii.  Hvidding Decl., ¶ 28; Leong Decl., ¶ 13.  Finally, Hvidding has submitted a sworn declaration stating that he did not file any police report regarding Sasha, false or otherwise.  Hvidding Decl., ¶ 30.

Even if the court considered Fehn's late opposition and exhibits, she has provided no admissible evidence to support her allegations or rebut the individual capacity Defendants' evidence.  Accordingly, the individual capacity Defendants are entitled to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (holding that summary judgment must be granted against a party who fails to demonstrate facts to establish what will be an essential element at trial); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (noting that the non-moving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial").

## IV. CONCLUSION

For the reasons stated herein, the Defendants' motions for summary judgment are GRANTED.  As a result of this Order, the only claims remaining in this case are Fehn's claims against Defendant Aulani McNeil.  The court reminds

//

//

//

21

Fehn that she has until October 6, 2006 to respond to the court's September 5, 2006 Order to Show Cause Order or her claims against McNeil will also be dismissed.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 5, 2006.



J. Michael Seabright
United States District Judge

*Fehn v. Hvidding, et al*, Civ. No. 05-00082 JMS/BMK, Order Striking Plaintiff's Opposition to the Defendants' Motions for Summary Judgment and Granting Defendants' Motions for Summary Judgment